**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. JRR-23-255** |
| | * | |
| **DONYEA KING et al.,** | | |
| | * | |
| | * | |
| **Defendants.** | * | |

<u>**GOVERNMENT'S MEMORANDUM IN SUPPORT OF**</u>
<u>**ITS ORAL MOTION TO DETAIN LARRY BENNER PENDING TRIAL**</u>

Defendant Larry Benner ("Benner" or "Defendant") should not be released from detention because there are no conditions or combination of conditions that will assure his appearance in court in the future or the safety of the community.  First, there is a rebuttable presumption of detention in this case because the maximum term of imprisonment under the Controlled Substances Act is more than ten years and Defendant is also charged with a violation of 18 U.S.C §924(c). Second, Defendant's lengthy criminal history demonstrates that he is incapable of complying with any terms of release set by the court or cannot be relied upon to appear in court.  There are at least ten incidents where Defendant failed to appear in court or violated the terms of his mandatory release.  Defendant has also displayed a pattern of committing controlled substance offenses, often with firearms, while on judicial supervision.

Finally, the nature of the offense is severe, the weight of the evidence is strong, and the nature and seriousness of Defendant's danger to the community is great.  Less than a year after being released from prison for a controlled substance offense, Defendant was arrested in this case after law enforcement officers watched him conduct or assist in conducting multiple drug transactions on Citiwatch camera.  Defendant had in his possession a loaded firearm, a loaded extended drum magazine, and a large quantity of drugs.  For these reasons and those more fully

described in this Motion and at oral argument, the government respectfully requests that this Court detain Benner pending trial.

## I.      FACTUAL BACKGROUND

On January 21, 2023, Baltimore City Police Department ("BPD") detectives began observing the 1500 block of E Lexington Street and the 200 block of Douglas Court via Citiwatch camera #257.  BPD detectives observed one of Defendant's co-conspirators make a suspected hand-to-hand drug transaction and then enter a residence at 200 Douglas Court.  Several minute later, Benner and his two co-conspirators, Donyea King ("King") and Shanequa Parham ("Parham") came out of the same residence and walked to the bus stop and picnic bench area between the 1500 Blocks of E Lexington Street and E Fayette Street.  The Citiwatch camera BPD detectives were utilizing is mounted immediately above 200 Douglas Court and has an unobstructed view of bus stop and picnic bench area.

BPD detectives then observed Benner and his co-conspirators make a number of suspected hand-to-hand drug transactions.  On approximately five occasions, a buyer would approach and speak with King.  King would then turn to either Benner or Parham who would hand either King or the buyer the suspected CDS.   In one instance, when King directed a buyer to Benner, Benner retrieved a small item out of a Newport cigarette box and handed it directly to the buyer.  A certified drug lab later determined that the CDS in that Newport box was heroin or some mixture of heroin, fentanyl, and 4-ANPP.  At one point while King and Parham were exchanging drugs and/or money, apparently cognizant that the three were in view of a camera, Benner  moved the two closer together and turned their bodies away from the camera to avoid law enforcement detection.

After these observations, law enforcement notified an arrest team who arrived on scene

shortly afterwards in marked police vehicles with flashing lights wearing police vests. When law enforcement arrived, Benner began to flee on a bike for a short time before continuing on foot. Officers caught up with him a short time later and tackled him to the ground. Officers recovered a loaded Smith & Wesson SD9VE 9mm Luger pistol, bearing serial number FCD6492, and 15 rounds of 9mm ammunition from the dip area of Benner's waistband. Additionally, while Benner ran from police, he threw and abandoned a black bag near the picnic tables, which is visible on the Citiwatch footage. Officers later recovered a large-capacity drum magazine with 35 live 9mm cartridges in that black bag.

At the time of his arrest, Benner was also in possession of:

- 87.28 g of cocaine
- 5.18 g of fentanyl (or a mixture containing fentanyl)
- .38 g of heroin
- 1.22 g of Amphetamine (two 30 mg pills and two 10 mg pills)
- 1.53 g of Alprazolam (12 Xanax pills)
- 6.11 g of Buprenorphine (seven Suboxone strips)

The CDS was located primarily on Benner's person in his pockets or in a blue pencil bag he had on him. However, some of heroin/fentanyl pills were found in the Newport cigarette box Benner was seen on Citiwatch camera using but that he left on the picnic table when he fled. The certified drug lab tested all the above-listed CDS.

## II.   APPLICABLE LAW

A court shall hold a detention hearing upon motion by the government in cases that involve "an offense for which the maximum sentence is life imprisonment or death" and "a serious risk that such person will flee." 18 U.S.C. § 3142(f)(1)(B); 18 U.S.C. § 3142(f)(2)(A). At that detention hearing, the court should determine if "any condition or combination of conditions . . . will reasonably assure the appearance of the person as required and the safety of any other person in the community . . . ." 18 U.S.C. § 3142(f); *United States v. Allen*, 409 F. Supp. 2d 622, 631 (D.

Md. 2006).   Though rebuttable, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act []." 18 U.S.C. § 3142(e)(3)(A).   The Bail Reform Act also requires that the Court consider the following factors in determining whether a defendant should be detained pending trial:

> (1) The nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance . . . ;
> (2) The weight of the evidence against the person;
> (3) The history and characteristics of the person . . . ; and
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).   The government may establish the existence of these factors by proffering facts to the Court. *See United States v. Clark,* 865 F.2d 1433, 1436 (4th Cir.1989) (recognizing that the parties may proffer facts at the detention hearing).

Once the presumption is triggered, "the burden of production shifts to the defendant to come forward with evidence to suggest that the presumption is unwarranted in his or her particular case." *United States v. Anderson*, No. CV ELH-19-302, 2020 WL 1929440, at *3 (D. Md. Apr. 20, 2020); *see also United States v. Boyd*, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007); *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018).   To do so, the defendant must proffer "at least some evidence" or basis to conclude that the case falls "outside 'the congressional paradigm'" giving rise to the presumption. *Id*. (quoting *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010)).   If the defendant offers evidence to counter the presumption, it does not fall out of the picture entirely but rather remains a factor in the court's totality-of-the-circumstances analysis. *Id*.

III.    **ARGUMENT**

A.    **Benner Should Be Detained Because There Is No Condition Or Combination Of Conditions That Will Reasonably Assure His Appearance In Court As Required And The Safety Of The Community.**

1.    **A Rebuttable Presumption Of Detention Applies In This Case.**

The Court should presume that there is no condition or combination of conditions that will reasonably assure the appearance of Defendant in court as required or the safety of the community. In this case, Benner is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act and a violation of 18 U.S.C. § 924(c), both of which trigger the rebuttable presumption of detention. *See* 18 U.S.C. § 3142(e)(3).

For the purpose of determining whether the presumption is triggered, "a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged. *United States v. Anderson*, No. CV ELH-19-302, 2020 WL 1929440, at *2 (D. Md. Apr. 20, 2020). In this case, a grand jury indicted Benner on July 25, 2023. ECF No. 1. The indictment charged Benner with 1) Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, 2) Possession with Intent to Distribute Controlled Substances, 3) Possession of a Firearm in Furtherance of Drug Trafficking, and 4) Possession of a Firearm and Ammunition by a Prohibited Person. *Id.* Based on Counts I, II, and III of the Grand Jury indictment against Benner, there is a rebuttable presumption that Benner be detained pending trial, and the government is not aware of any evidence or basis for this Court to conclude that the case falls outside of the congressional paradigm giving rise to the presumption.

**2.  The 18 U.S.C. § 3142(g) Factors Demonstrate That No Condition Or Combination Of Conditions Will Assure Benner's Appearance And The Safety Of The Community.**

**i.  The Nature And Circumstances Of The Case And Weight Of The Evidence Against Benner Support Detention.**

The quantity of cocaine, in addition to dangerous fentanyl, in Benner's possession at the time of his arrest as well as the loaded firearm and extended drum magazine all support detention. Not only did Benner possess a large quantity of controlled substances at the time of his arrest, but he is also on video distributing those controlled substances.  In particular, Benner is on camera distributing drugs out of the Newport cigarette box that a certified drug lab confirmed contained heroin, fentanyl, and/or 4-ANPP.  Further, Benner had both a loaded firearm and an easily accessible extended drum magazine loaded with 35 live 9mm ammunition.  It is clear that Benner was poised to protect his product and drug proceeds with extreme force, if necessary, in an area with a lot of drug trafficking and violence.

**ii.  Benner's Criminal History Demonstrates That He Cannot Satisfactorily Comply With Conditions Of Judicial Supervision And Includes Multiple Controlled Substance And Firearm Offenses.**

Benner has a lengthy criminal history that demonstrates a pattern of dealing drugs, often while in possession of a firearm and on judicial supervision, and it shows that he is unable to comply with conditions of judicial release or be counted on to appear in court as required.

As a juvenile, Benner was adjudicated delinquent and committed to the Department of Juvenile Services for the unauthorized use of a handgun in 2000.  He had multiple other weapons and controlled substance charges dismissed around the same time.  Pretrial Service Report ("PTSR") at 12.

Benner was arrested in March 2004 in his first criminal case as an adult.  He was charged with both PWID and CDS Possession, though he was ultimately only convicted of CDS

Possession.  After receiving a one-year suspended sentence, Benner failed to appear in court twice in 2004 and 2005, resulting in the state court issuing arrest warrants for his violations of probation. He was adjudged guilty of those violations of probation and his probation was revoked and closed unsatisfactorily.  PTSR at 4.

About two months later in May 2004, Benner was arrested again and convicted of conspiracy to distribute cocaine and sentenced to two years' incarceration.  After he was released from prison, Benner violated the terms of his mandatory release in September 2006 and March 2007.  Benner was again adjudged guilty of those violations and his case was closed unsatisfactorily.  PTSR at 4–5.  While Benner was awaiting trial in this case, he was released on bond in June 2004.  Four months later, in October 2004, he was arrested again on PWID charges and detained until those charges were dismissed in 2005.  PTSR at 5.

In May 2006, only seven months after being released from prison for his conspiracy to distribute cocaine conviction, Benner was arrested twice for CDS possession offenses.  He was released on bond in both, but he failed to appear for a court hearing in one case, resulting in the state court issuing warrants for his arrest.  PTSR at 5.

In August 2006, Benner was arrested again on a controlled substance offense and released on bond.  PTSR at 6.  Less than a week later, Benner was arrested for robbing a restaurant in Baltimore City at gunpoint.  During the robbery, Benner held several people at gunpoint against their will, held the gun to one victim's head, and discharged the firearm in the direction of another victim.  Benner was convicted attempted armed robbery, first degree assault, second degree assault, and the use of a handgun in committing a crime for which he was sentenced to ten years in prison with no parole for the first five years.  PTSR at 6–8.

In 2007, prior to serving his sentence in the armed robbery, Benner was arrested and

convicted of fraud for making a false statement to an officer about his identity to avoid prosecution. PTSR at 9.

Benner was released from prison on the armed robbery conviction in October 2013.  In November 2013, he was ticketed for driving without a valid registration and later failed to appear in court on that charge, resulting in the Baltimore City District Court issuing a failure to appear warrant.  PTSR at 9.

In March 2014, while on parole for the armed robbery conviction and just five months after being released from prison, Benner was arrested on PWID charges again and released on bond. He *again* failed to appear in court, resulting in the state court issuing a failure to appear warrant. PTSR at 9.

In June 2014, while still on parole from the armed robbery conviction, Benner was arrested on PWID and firearms charges.  In this case, BPD executed a search warrant on his residence at 2130 E North Avenue, where he appears to have lived with his mother, and found CDS, CDS paraphernalia, and a loaded firearm.  Benner was detained pending trial, convicted, and sentenced to five years incarceration.  Benner was released from prison on parole in November 2018.  PTSR at 10.

Three months later, in February 2019, Benner was again arrested on CDS charges while still on parole from his 2014 PWID conviction.  He was convicted of PWID Conspiracy and sentenced to another five years in prison.   As a result of this conviction, Benner's parole in the 2014 PWID conviction was revoked.  Benner was released from prison on this conviction in February 2022.  PTSR at 9–11.  Less than a year later, and again while still on parole, Benner was arrested for the present CDS and firearm offense and has been detained by the state ever since. PTSR at 11.

While Benner was on parole at the time of the instant offense, the parole commission has not yet issued a parole retake warrant.  The parole board is waiting to see what happens with this case and wants to be notified if Defendant's detention or bail status changes, in which case they may issue a retake warrant.  PTSR at 11.  Additionally, Benner's parole agent reported that Benner's compliance with supervision has been poor.  He fails to report to Probation and Parole as directed and changes his contact information and address with notice.  PTSR at 11.  Accordingly, even if Benner is released from federal custody on these charges, he will likely be detained on parole violations in the state.

In sum, Benner has at least ten instances of failure to appear for court when released on bond or failure to comply with the conditions of release.  He has repeatedly committed additional crimes within days to months of being released from custody on bond or parole.  Nothing about his track record indicates that he is capable of complying with any condition or combination of conditions set by the Court in an effort to assure his appearance in court as required and the safety of the community.

### iii. The Nature And Seriousness Of The Danger Benner Poses To The Community Is Too Great To Release Him From Detention.

As described at length above, if he is released pending trial, Benner is almost certain to reoffend, likely by continuing to deal drugs potentially with a firearm.  Releasing Benner from detention simply poses too big a risk to a community plagued by drug and gun violence.  Several courts in this district and beyond have commented on the particular danger to the community that comes from dealing cocaine and fentanyl.  See e.g., *United States v. Johnson*, 810 F. App'x 209, 213 (4th Cir. 2020) ("[T]he seriousness of the offense in that, although [the defendant] attempted to distribute heroin, he actually distributed fentanyl, a deadly substance."); *United States v. Gray*, 2022 WL 294295, at *4 (D. Md. Jan. 31, 2022) ("The danger . . . to the community, moreover, is

great. He has pled guilty to possession of 1090 gel caps of fentanyl, a particularly pernicious and deadly controlled dangerous substance."); *United States v. Cannon*, 2020 WL 1820087, at *3 (D. Md. Apr. 10, 2020) ("[T]he Court has an added responsibility to the community at large by virtue of the Bail Reform Act to give full consideration to *all* the consequences of a defendant's release as it impacts community safety . . . . Drug overdoses, especially with the deadly emergence of fentanyl as in this case, continue.") (emphasis in original); *United States v. Tucker*, No. GJH-19-555, 2020 WL 4436369, at *2 (D. Md. Aug. 3, 2020) (denying motion for reconsideration of Bond based on him posing a significant danger to the community because of his access to dangerous weapons and large amount of narcotics, including cocaine, in the past); *see also United States v. Lnu*, No. 205MJ213, 2005 WL 1262515, at *1 (E.D. Va. May 27, 2005) (denying release and finding defendant a danger to the community based on his continued efforts to purchase and distribute cocaine base).

**B.    Defendant's Mother Would Not Be A Suitable Third Party Custodian.**

Defendant seeks to be released to the custody of his mother, Ms. Maria Parker.  While the government appreciates Ms. Parker's willingness to try to supervise her son while he is on pretrial release, the government does not believe that this will be a successful arrangement.  As noted in the PTSR Report, Defendant was living with his mother at the time of his arrest on this charge. PTSR at 1.  He was also on parole at the time of this arrest from his 2019 PWID conspiracy charge. Despite perhaps her best efforts, it does not appear Ms. Parker could stop Benner from obtaining a firearm or dealing drugs.

The same is true for his arrest and subsequent 2014 PWID conviction.  In that case, BPD Detectives obtained a search warrant for 2130 E. North Ave, which is noted in the PTSR report as the address most recently associated with Benner.  PTSR at 2.  During that raid, law enforcement

located Ms. Parker in one of the bedrooms in the home and found a Glock 17 9mm handgun with two magazines and 31 live rounds of 9mm ammunition, CDS paraphernalia, and suspected heroin and cocaine in a shoe.  During pre-raid surveillance, law enforcement observed Benner sitting on the porch of the residence, and Ms. Parker identified the shoes the CDS was found in to be Benner's shoes.  Benner was ultimately convicted on charges related to the gun and drugs.  It appears Ms. Parker was also originally charged in that case, though the charges were Nolle Prosequi.  PTSR at 2.  At the time of this incident, Benner was on parole.  Again, perhaps despite her best efforts, Ms. Parker was unable to ensure Benner adhered to his conditions of release or stop him from obtaining a firearm or narcotics.

Accordingly, the government respectfully submits that Ms. Parker would not be a suitable third-party custodian to supervise Defendant on pretrial release.

## IV.     CONCLUSION

For the reasons set forth above, the government respectfully submits that no condition or combination of conditions will protect the community and requests that the Defendant be detained pending trial.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:                _\_/s/_____
Liane D. Kozik
Special Assistant United States Attorney