IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. JRR-23-255-1** |
| | * | |
| **DONYEA KING et al.,** | | |
| | * | |
| | * | |
| **Defendants.** | * | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF
ITS ORAL MOTION TO DETAIN DONYEA KING PENDING TRIAL**

Defendant Donyea King ("King" or "Defendant") should not be released from detention because there are no conditions or combination of conditions that will assure his appearance in court in the future or the safety of the community. First, there is a rebuttable presumption of detention in this case because the maximum term of imprisonment under the Controlled Substances Act is more than ten years. Second, Defendant's lengthy criminal history demonstrates that he is incapable of complying with any terms of release set by the court. Defendant has also displayed a pattern of committing controlled substance offenses and crimes of violence, often with firearms, while on judicial supervision.

Finally, the nature of the offense is severe, the weight of the evidence is strong, and the nature and seriousness of Defendant's danger to the community is great. Defendant was arrested in this case after law enforcement officers watched him conduct or assist in conducting multiple drug transactions on Citiwatch camera. While Defendant may not have had the drugs or gun on his person when he was arrested, his co-conspirators, whom Defendant was directing and controlling, had a large quantity of drugs, a loaded firearm, and a loaded extended drum magazine. For these reasons and those more fully described in this Motion and at oral argument, the government respectfully requests that this Court detain King pending trial.

1

I.      **FACTUAL BACKGROUND**

On January 21, 2023, Baltimore City Police Department ("BPD") detectives began observing the 1500 block of E Lexington Street and the 200 block of Douglas Court via Citiwatch camera #257. BPD detectives observed King make a suspected hand-to-hand drug transaction and then enter a residence at 200 Douglas Court. Several minutes later, King and his two co-conspirators, Larry Benner ("Benner") and Shanequa Parham ("Parham") came out of the same residence and walked to the bus stop and picnic bench area between the 1500 Blocks of E Lexington Street and E Fayette Street. The Citiwatch camera BPD detectives were utilizing is mounted immediately above 200 Douglas Court and has an unobstructed view of the bus stop and picnic bench area.

BPD detectives then observed King and his co-conspirators make a number of suspected hand-to-hand drug transactions at the bus stop area. On approximately five occasions, a buyer would approach and speak with King. King would then turn to either Benner or Parham, who would hand either King or the buyer the suspected CDS. At the time of this incident, Parham was in a relationship with King and pregnant with his child. In one instance, when King directed a buyer to Benner, Benner retrieved a small item out of a Newport cigarette box and handed it directly to the buyer. A certified drug lab later determined that the CDS in that Newport box was heroin or some mixture of heroin, fentanyl, and 4-ANPP.

At one point, while King and Parham were exchanging drugs and/or money, apparently cognizant that the three were in view of a camera, Benner moved the two closer together and turned their bodies away from the camera to avoid law enforcement detection.

After these observations, law enforcement notified an arrest team who arrived on the scene shortly afterward in marked police vehicles with flashing lights wearing police vests. When law

enforcement arrived, the three co-conspirators dispersed. When officers arrested King, he had a small amount of marijuana, $128 in U.S. currency, and two cell phones on his person. While King did not have drugs or a gun on his person, his two co-conspirators, who were clearly holding the drugs for King, were arrested in possession of the following:

- A Smith & Wesson 9mm Luger pistol loaded with 15 rounds of 9mm ammunition;
- A separate large-capacity drum magazine with 35 9mm cartridges
- 87.28 g of cocaine
- 5.18 g of fentanyl (or a mixture containing fentanyl)
- .38 g of heroin
- 1.22 g of Amphetamine (two 30 mg pills and two 10 mg pills)
- 1.53 g of Alprazolam (12 Xanax pills)
- 6.11 g of Buprenorphine (seven Suboxone strips).

Parham can also be seen on camera throwing away the remainder of the pack of drugs she was holding prior to the police arriving on the scene.

During a search of 200 Douglas Court later that night, the residence King and his co-conspirators were seen going in and out of prior to their arrest, law enforcement officers also found a measuring cup with CDS residue, a scale with CDS residue, CDS packaging material, an unloaded Glock magazine, and 17 rounds of loose 9mm ammunition.

## II.   APPLICABLE LAW

A court shall hold a detention hearing upon motion by the government in cases that involve "an offense for which a maximum term of imprisonment of ten years or is prescribed by the Controlled Substances Act (21 U.S.C. 801 *et seq*.)." 18 U.S.C. § 3142(f)(1)(C). At that detention hearing, the court should determine if "any condition or combination of conditions . . . will reasonably assure the appearance of the person as required and the safety of any other person in the community . . . ." 18 U.S.C. § 3142(f); *United States v. Allen*, 409 F. Supp. 2d 622, 631 (D. Md. 2006). Though rebuttable, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the

3

community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act []." 18 U.S.C.§ 3142(e)(3)(A).  The Bail Reform Act also requires that the Court consider the following factors in determining whether a defendant should be detained pending trial:

> (1) The nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance . . . ;
> (2) The weight of the evidence against the person;
> (3) The history and characteristics of the person… ; and
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).  The government may establish the existence of these factors by proffering facts to the Court. *See United States v. Clark,* 865 F.2d 1433, 1436 (4th Cir.1989) (recognizing that the parties may proffer facts at the detention hearing).

Once the presumption is triggered, "the burden of production shifts to the defendant to come forward with evidence to suggest that the presumption is unwarranted in his or her particular case."  *United States v. Anderson*, No. CV ELH-19-302, 2020 WL 1929440, at *3 (D. Md. Apr. 20, 2020); *see also United States v. Boyd*, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007); *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018).  To do so, the defendant must proffer "at least some evidence" or basis to conclude that the case falls "outside 'the congressional paradigm'" giving rise to the presumption.  *Id*. (quoting *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010)).  If the defendant offers evidence to counter the presumption, it does not fall out of the picture entirely but rather remains a factor in the court's totality-of-the-circumstances analysis. *Id*.

## III. ARGUMENT

### A. King Should Be Detained Because There Is No Condition Or Combination Of Conditions That Will Reasonably Assure His Appearance In Court As Required And The Safety Of The Community.

#### 1. A Rebuttable Presumption Of Detention Applies In This Case.

The Court should presume that there is no condition or combination of conditions that will reasonably assure the appearance of King in court as required or the safety of the community. In this case, King is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, which triggers the rebuttable presumption of detention. *See* 18 U.S.C. § 3142(e)(3).

For the purpose of determining whether the presumption is triggered, "a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Anderson*, No. CV ELH-19-302, 2020 WL 1929440, at *2 (D. Md. Apr. 20, 2020). In this case, a grand jury indicted King on July 25, 2023. ECF No. 1. The Indictment charged King with 1) Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances and 2) Possession with Intent to Distribute Controlled Substances. *Id.* Based on Counts I and II of the Indictment against King, there is a rebuttable presumption that King be detained pending trial, and the government is not aware of any evidence or basis for this Court to conclude that the case falls outside of the congressional paradigm giving rise to the presumption.

#### 2. The 18 U.S.C. § 3142(g) Factors Demonstrate That No Condition Or Combination Of Conditions Will Assure King's Appearance And The Safety Of The Community.

##### i. The Nature And Circumstances Of The Case And Weight Of The Evidence Against King Support Detention.

It is clear from the camera footage that King was leading the drug dealing operation on

January 21, 2023, and that he constructively possessed all of the drugs found with his co-conspirators.  In the context of the possession of controlled substances, "possession may be actual or constructive, and it may be sole or joint." *United States v. Moody*, 2 F.4th 180, 189 (4th Cir. 2021). "Actual possession is defined as physical control over property." *United States v. Moye*, 454 F.3d 390, 395 (4th Cir. 2006) (omitting internal quotations).  "Constructive possession may be proved by demonstrating "that the defendant exercised, or had the power to exercise, dominion and control over the item." *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996). "The government can establish constructive possession by direct or circumstantial evidence." *United States v. Blunder*, 795 F. App'x 180, 182 (4th Cir. 2019).  "Multiple persons possessing a large quantity of drugs and working in concert sufficiently establish constructive possession." *Burgos*, 94 F.3d at 873.

While King did not have the drugs on his person at the time of his arrest, King exercised dominion and control over the drugs by directing Benner and Parham to provide the drugs to him or to the individuals who approached and paid King.  This can clearly be seen on the Citiwatch video footage.  King, therefore, constructively possessed the drugs even though he was not physically holding the drugs at the time of his arrest.

The quantity of cocaine, in addition to dangerous fentanyl, in King's constructive possession also supports detention.  Not only did King constructively possess a large quantity of controlled substances, but he was also on video distributing those controlled substances. On one occasion clearly depicted on camera, King directed Benner to provide drugs to a buyer, which Benner did from a Newport cigarette box that a certified drug lab confirmed contained a mixture of heroin, fentanyl, and/or 4-ANPP.

Further, Benner had both a loaded firearm and an easily accessible extended drum

magazine loaded with 35 live 9mm ammunition.  It is clear that Benner was poised to protect the product and drug proceeds of the conspiracy with King using extreme force, if necessary, in an area with a lot of drug trafficking and violence.

> ii. **King's Criminal History Demonstrates That He Cannot Satisfactorily Comply With Conditions Of Judicial Supervision And Includes Multiple Controlled Substance And Firearm Offenses.**

King has a lengthy criminal history that demonstrates a pattern of dealing drugs, often while in possession of a firearm and on judicial supervision, and it shows that he is unable to comply with conditions of judicial release or be counted on to appear in court as required.

As a juvenile, King had ten separate arrests for offenses such as CDS possession, robbery, second-degree assault/battery, and CDS distribution.  PTSR at 9.

In 2004, King was found to be delinquent as a minor and placed on probation.  PTSR at 4.  He violated that probation the following year.  *Id*.  In 2007, he was released to Drug Court (drug treatment), which was unsuccessful, and the court terminated the case based on a new drug possession arrest.  PTSR at 4–5.

In February 2008, as an adult, King was arrested and convicted of drug possession and sentenced to probation before judgment.  PTSR at 4.  He violated that probation almost immediately by getting arrested four times from March through June 2008 for charges related to CDS possession and distribution and firearms.  PTSR at 5-6.

In October 2008, he was convicted for attempting to manufacture and distribute CDS and CDS possession based on three of the four arrests earlier that year.  All of his prison time was suspended, and he was released to drug court again as part of his probation in the February 2008 case.  PTSR at 4.  The PTSR does not specify if he successfully completed treatment, but the case was later closed unsatisfactorily after the Court issued a bench warrant for King's failure to appear

in the case. *Id.*

Less than two months later, in December 2008, King was arrested for possession of a firearm and PWID. PTSR at 6. This arrest led to violations of probation from his October 2008 convictions and his eventual federal indictment.

On August 3, 2009, a federal grand jury indicted King on violations of 21 U.S.C. §841(a)(possession with intent to distribute cocaine), 18 U.S.C. §924(c) (possession of a firearm in connection with drug trafficking), and 18 U.S.C. §922(g)(possession of a firearm by a prohibited person). Shortly afterward, he was released from state custody on the violation of probation charge to an in-patient drug treatment facility prior to being brought into federal custody.

King had his initial appearance for the federal charges on November 30, 2009, and Judge Grimm released King pending trial into the custody of his grandmother, Janice West, and ordered King to participate in the Baltimore City drug court in-patient treatment. ECF 8, Case No. 09-0440-CCB. He was released to in-patient treatment at Sexton Hill on December 1, 2009.

On March 19, 2010, *less than four months later and while on federal pretrial release*, King was arrested for armed robbery conspiracy. In that incident, King and an associate robbed and shot a man outside a liquor store. That man later died in the hospital. King was held without bond in the state until he was convicted on those charges and sentenced to 10 years in prison, with seven years suspended.

King later pled guilty to a violation of 18 U.S.C. §922(g) in his federal case and was sentenced to 60 months incarceration and three years of supervised release. As the PSR notes, King repeatedly violated this Court's conditions of release, including by failing to keep approximately seven substance abuse group sessions, failing to keep approximately six random urinalyses, failing to complete substance abuse treatment, failing to notify his probation officer of

his arrests, failing to submit truthful and complete monthly supervision reports, failing to work or attend school, and failing to make efforts to obtain his GED.

In January 2015, *six months after getting out of federal prison and while on supervised release and probation for the armed robbery conspiracy conviction*, King was again arrested and later convicted of PWID and Escape. PTSR at 7. He was sentenced to two years in prison for PWID and six months for Escape. *Id*. When he got out of prison for that conviction, this Court found him guilty of a violation of supervised release, revoked his supervised release, and sentenced him to one year and one day in prison. He was released from federal custody in March 2017. PTSR at 6.

A little over a year later, in August 2018, King was arrested again for PWID and possession of a firearm. PTSR at 8. He was convicted on the PWID charge, sentenced to three years in prison, and released in October 2020. *Id*. About six weeks later, on November 18, 2020, King was arrested for PWID and possession of a firearm again. Those charges were eventually Nolle Prosequi, but the Court should still consider it in assessing the totality of the circumstances of King's history and characteristics.

As described above, the circumstances of this case occurred in January 2023. Because King was not found with the gun or drugs on his person, the state released him on his own recognizance. His actions during that time were, therefore, not being closely watched by the state.

In July 2023, King was arrested and charged with possession of a handgun and second-degree assault. This case stemmed from a domestic violence incident where a woman he was in a relationship with alleged that King shoved her, reached into his waistband, and brandished a gun. The woman called the police and observed another individual take the gun from King and hide it, presumably so---similar to this case---the gun would not be on his person at the time of his arrest.

9

She advised police, however, that she did not want to press charges. While this case was Nolle Prosequi, that is not surprising given the fact that most domestic violence cases do not result in prosecution, and the victim did not want to press charges. Again, however, the Court should consider the totality of the circumstances and how King has repeatedly been arrested for possession of a firearm shortly after being released from prison.

In sum, King has at least five instances of violation of probation or supervised release and two failure-to-appear warrants. He has repeatedly committed additional crimes within weeks or months of getting out of prison. Nothing about his track record indicates that he is capable of complying with any condition or combination of conditions set by the Court in an effort to assure his appearance in court as required and the safety of the community.

### iii. The Nature And Seriousness Of The Danger King Poses To The Community Is Too Great To Release Him From Detention.

As described at length above, if he is released pending trial, King is almost certain to reoffend, likely by continuing to deal deadly drugs, potentially with a firearm. Releasing King from detention simply poses too big a risk to a community plagued by drug and gun violence. Several courts in this district and beyond have commented on the particular danger to the community that comes from dealing cocaine and fentanyl. *See, e.g.*, *United States v. Johnson*, 810 F. App'x 209, 213 (4th Cir. 2020) ("[T]he seriousness of the offense in that, although [the defendant] attempted to distribute heroin, he actually distributed fentanyl, a deadly substance."); *United States v. Gray*, 2022 WL 294295, at *4 (D. Md. Jan. 31, 2022) ("The danger . . . to the community, moreover, is great. He has pled guilty to possession of 1090 gel caps of fentanyl, a particularly pernicious and deadly controlled dangerous substance."); *United States v. Cannon*, 2020 WL 1820087, at *3 (D. Md. Apr. 10, 2020) ("[T]he Court has an added responsibility to the community at large by virtue of the Bail Reform Act to give full consideration to *all* the

10

consequences of a defendant's release as it impacts community safety . . . . Drug overdoses, especially with the deadly emergence of fentanyl as in this case, continue.") (emphasis in original); *United States v. Tucker*, No. GJH-19-555, 2020 WL 4436369, at *2 (D. Md. Aug. 3, 2020) (denying motion for reconsideration of Bond based on him posing a significant danger to the community because of his access to dangerous weapons and large amount of narcotics, including cocaine, in the past); *see also United States v. Lnu*, No. 205MJ213, 2005 WL 1262515, at *1 (E.D. Va. May 27, 2005) (denying release and finding defendant a danger to the community based on his continued efforts to purchase and distribute cocaine base).

What is concerning about King, in particular, is his willingness to recruit other members of the community into his operation and put them in danger to help insulate himself, including vulnerable members of the community like his pregnant girlfriend. Prior to this incident with King, Parham did not have a criminal history indicative of drug use or drug dealing. However, in this case, she is seen on camera holding dangerous drugs for King while pregnant and letting him use her mother's residence at 200 Douglas Court to likely cut drugs. Therefore, releasing King does not just create a generalized risk to the community at large, but it also creates a specific danger to those close to King, whom he may recruit to help him in future drug deals.

Finally, the Court should not overlook how dangerous King has been to the community in the past while he was out on pretrial release or other judicial supervision. Only four months after being released on federal pretrial supervision, he was arrested for an armed robbery incident where someone was shot and killed. PTSR at 7.

> **B.    Defendant Is Not An Appropriate Candidate For Pre-Trial Release To In-Patient Drug Treatment.**

Counsel for King has stated that her primary plan for release would be to have King attend an in-patient drug treatment facility at Guadenzia for 3-6 months. There is no definitive plan for

what King would do after he finishes drug treatment except to revisit the issue and re-open the detention hearing. This plan is impractical.

### i. King Does Not Have a Current Drug Problem.

King is not an appropriate candidate for in-patient drug treatment because he does not currently have a drug problem. According to the PTSR, he has not used drugs for 11 months. Further, he has been in jail since at least July, where he has not been using drugs. There is nothing to indicate that he has been using drugs while incarcerated or that he is currently suffering from any drug withdrawal symptoms. Even if he was using drugs in jail with all of the oversight and supervision at such an institution, that is another reason that he cannot be trusted to refrain from using drugs while in an in-patient center where there is less supervision than in jail. King taking a bed at an in-patient drug treatment facility when he is not a current drug user is not an appropriate solution to his situation. Baltimore has no shortage of active drug users who could benefit more from a bed at such an in-patient facility.

While King may have a historical drug problem, the answer to that issue at this juncture would not be in-patient treatment. He may benefit from out-patient treatment so that he can learn how to cope with addiction while living in the world and not turning to selling drugs or committing other crimes. However, that would also not be appropriate here in light of how dangerous his release into the community would be, that he does not have a suitable place to live, and that he has not been successful in those programs in the past while under the supervision of this Court.

### ii. King Has Been Given Multiple Chances To Utilize Drug Treatment, None of Which Have Been Successful.

King has been given at least three opportunities by courts in the past, including by this Court, to attend drug treatment programs. None of those efforts were successful. There is nothing

to indicate that this time would be any different.  King was released to Drug Court in lieu of detention in 2007 and then again in 2008.  PTSR at 4-5.  In both instances, King was arrested shortly afterward for drug and firearm offenses.  PTSR.  Both of those cases were later closed unsatisfactorily.

This Court then gave him another opportunity to go to drug treatment after his indictment for drugs and firearms in 2009.  He again squandered the opportunity.  As the PTSR notes, King failed to keep approximately seven substance abuse group sessions, failed to keep approximately six random urinalyses, and failed to complete substance abuse treatment.  It is not clear from the PTSR whether this was while King was on pretrial release or supervised release, but regardless, it indicates a complete inability to adhere to conditions of judicial release related to substance abuse.

### iii.  Guadenzia Is Not An Appropriate Venue For King's Release.

Even if the Court were to be inclined to release King to a drug treatment facility, Guadenzia is not the proper venue.  According to Pre-trial, it does not have a contract with Guadenzia.  It only has contracts with Avery Road, Shoemaker, and Mountain Manor Baltimore.  Those programs do not have an option like the one suggested by the defense to allow King to be in-patient for 3-6 months.  All three programs only have a seven-day detoxification program and a 28-day in-patient program.

Additionally, releasing King to Guadenzia, or any in-patient facility, would not reasonably assure the safety of the community.  These facilities are simply not secure.  Patients can come and go as they please.  There is nothing that keeps them in the facility, and pre-trial cannot set up electronic location monitoring of the Defendant while he is in Guadenzia.

### iv. Defense Has No Plan For King After Guadenzia.

Importantly, Defense has no plan for what King will do upon his completion of an in-

patient drug treatment program. At best, they offer to have him come back into custody and/or to re-open the detention hearing at that point. Practically speaking, a defendant is not going to agree to be detained after being out for three months, nor is it a good use of judicial resources. As discussed below, King does not currently have a suitable third-party custodian, which is likely why defense counsel is not suggesting he be released to a third-party custodian after he finishes treatment. That is not likely going to change in the next few months. Defense should present the Court with a comprehensive plan of how to supervise King until his trial if he is going to be released from detention, as opposed to a piecemeal, temporary plan.

Because King is not a good candidate for in-patient drug treatment, he has squandered each opportunity he has been given in the past by courts to get drug treatment only to re-offend shortly after being released, and his attendance at Guadenzia would only be a temporary measure that would not adequately assure the safety of the community, the Court should deny Defense's request to release King to Guadenzia at this time and keep him detained until trial.

### C. Defendant's Grandmother Would Not Be A Suitable Third Party Custodian.

It is the government's understanding that King only seeks to be released to his grandmother's custody in the alternative to going to in-patient treatment at Guadenzia. However, even as an alternative plan, this would not be a suitable plan for release. While the government appreciates Ms. West's willingness to try to supervise her grandson while he is on pretrial release, the government does not believe that this will be a successful arrangement. As noted in the PTSR Report, Defendant was living with his grandmother at the time of his arrest on the incident detailed in the Indictment and the July 2023 charge. PTSR at 1. Additionally, the PTSR notes that King had been living with his grandmother since October 2020, presumably when he was released from prison from his 2019 PWID conviction. *Id*. Since that time, King was arrested four times for CDS

distribution and/or possession of a firearm. PTSR at 8-9. Additionally, this Court unsuccessfully released King into Ms. West's custody in 2009. Despite perhaps her best efforts, it does not appear Ms. West can stop King from obtaining a firearm or dealing drugs.

Importantly, Ms. West currently lives in subsidized housing. If King is not put on the lease or the housing authority learns that King, while living with his grandmother, engaged in drug-related or other criminal activity, it could terminate Ms. West's lease. *See* 42 U.S.C. 1437d(l)(6); 24 CFR 966.4(f)(6), (l). As detailed above, due to the high likelihood that King would reoffend while out on pretrial release, the risk that Ms. West would lose her housing is simply too great to warrant releasing King to her custody.

Accordingly, the government respectfully submits that Ms. Parker would not be a suitable third-party custodian to supervise Defendant on pretrial release.

### IV.   CONCLUSION

For the reasons set forth above, the government respectfully submits that no condition or combination of conditions will protect the community and requests that the Defendant be detained pending trial.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:            _____/s/_____
Liane D. Kozik
Special Assistant United States Attorney