

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

*James O'Donohue*  |  *Suite 400*  |  DIRECT: 410-209-4985
*Assistant United States Attorney*  |  *36 S. Charles Street*  |  MAIN: 410-209-4800
*James.O'Donohue@usdoj.gov*  |  *Baltimore, MD 21201-3119*  |

October 18, 2024

The Honorable Julie R. Rubin
United States District Judge
United States District Court for the District of Maryland
101 W. Lombard St.
Baltimore, MD 21201

    Re:    <u>United States v. Larry Benner</u>
              Criminal No. JRR-23-255-2

Dear Judge Rubin:

    I am writing to state the government's sentencing recommendation in the above-referenced case. For the reasons discussed below, the government respectfully requests that the Court accept the Rule 11(c)(1)(C) agreement and sentence the defendant to a sentence of 96 months' incarceration, which is near the middle of the United States Sentencing Guidelines (U.S.S.G.) for this case and is the sentence recommended by the United States Probation Office. PSR at 23.

## Sentencing Procedure

    In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth a multi-step process for imposing sentence in a criminal case. *Id*. at 51-52. A sentencing court should begin by correctly calculating the applicable guidelines range. *Id*. at 49. After providing the parties with an opportunity to present argument, the district court should then consider the factors set forth in 18 U.S.C. § 3553(a). *Id*. at 49-50. *See also United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011).

## Sentencing Guidelines Calculation

    The defendant pled guilty to count four of the indictment – Possession of a Firearm and Ammunition by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1). The base offense level for count four is **22** pursuant to U.S.S.G. § 2K2.1(a)(3) because the firearm in this case was a semiautomatic firearm capable of accepting a large capacity magazine, and the defendant committed the instant offense subsequent to sustaining at least one crime of violence or controlled substance offense. The base offense level is increased by **4** levels pursuant to U.S.S.G.

1

§ 2K2.1(b)(6) because the defendant possessed the firearm in connection with another felony offense, specifically the possession with intent to distribute controlled substances.

The defendant accepted responsibility for his misconduct and accordingly the government does not oppose a 2-level reduction in the defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a). The government also agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the defendant's timely notification of the defendant's intention to enter a plea of guilty. Therefore, the adjusted offense level is **23**.

The defendant's criminal history points due to his convictions total to 9, but one additional point is added because he committed the instant offense while under a criminal justice sentence with the Circuit Court for Baltimore City. USSG § 4A1.1(e). As a result, his criminal history score is 10, and he is a criminal history category of **V**.

With an adjusted offense level of **23** and criminal history category of **V**, the defendant's sentencing guideline range is which would make the sentencing guideline range **84-105** months imprisonment.

As explained in more detail below, the government believes that a sentence of 96 months imprisonment, which is within the guidelines range, is sufficient but no greater than necessary to serve the goals of 18 U.S.C. § 3553(a).

## Factors Set Forth in 18 U.S.C. § 3553(a)

Under § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The government believes the following 3553(a) factors are most relevant in this case:

I.   <u>Nature and Circumstances of the Offense (3553)(a)(1))</u>

There is no doubt that the nature and circumstances of the offense are very serious. Put simply, on January 21, 2023, the defendant was engaged in distributing controlled dangerous substances (CDS) on the streets of Baltimore while armed with a pistol loaded with 15 rounds in his waistband and an additional drum magazine loaded with 35 rounds of ammunition in his bag. But the defendant was not distributing CDS alone – he was engaged in a conspiracy with two other individuals to do so. BPD officers were monitoring the drug distribution activity unfold via Citiwatch cameras, and when they arrested the defendant, they recovered approximately 87 grams of cocaine, 5 grams of fentanyl, 12 Alprazolam (Xanax) pills, 7 Buprenorphine strips, and less than one gram of heroin from the defendant, along with the aforementioned loaded pistol and additional ammunition. The defendant's actions in this case were undoubtedly serious.

II.   <u>History and Characteristics of the Offender (3553(a)(1))</u>

The defendant's criminal history is also very troubling. Although just 39 years old, he has amassed a lengthy record of violence and drug trafficking. His history with drug distribution began in 2005, when he was convicted in Baltimore City Circuit Court of Conspiracy to Manufacture, Distribute, and Dispense Narcotics, and sentenced to 2 years incarceration. PSR ¶ 32. His criminal actions, however, became more violent as he was convicted in 2007 for various charges of Attempted Armed Robbery, Assault in the First Degree, and Use of a Handgun in Committing a Crime. He was sentenced to 10 years incarceration with concurrent time on other offenses. PSR ¶ 34. As indicated in the PSR, the defendant was subsequently released to community supervision, but his compliance was characterized as "poor". PSR ¶ 34. The defendant continued to engage in drug distribution related activity, leading to additional convictions in 2014 and 2019 for CDS distribution offenses. There are two particularly notable factors for the Court to consider about these later offenses: (1) in the 2014 case, the defendant, like in the instant matter, possessed a firearm in connection with his drug trafficking offense and (2) only <u>three</u> months transpired between his release from the 2014 case (November 2018) until he committed yet another drug trafficking offense in January 2019. He was released from prison on the 2019 case in February 2022 and committed the instant offense less than one year later in January 2023, while still on parole. Taken as a whole, the defendant has shown a troubling pattern of violence, drug trafficking, possessing firearms to further his drug trafficking, and failing to comply with periods of community supervision.

III.   <u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant (3553(a)(2))</u>

A sentence of 96 months incarceration is necessary to provide just punishment and adequately protect the public. As discussed above, this is not the defendant's first firearm conviction in relation to a drug trafficking offense. A sentence of 96 months, which is within the guidelines range, would also hopefully deter other individuals from committing similar crimes and would therefore serve as both a specific and general deterrent. Moreover, it would protect the public, namely the potential victims of the defendant's drug and firearm related activity, for a significant amount of time. An additional period of supervised release of 3 years following his release from prison would also deter the defendant's criminal activity and protect the public.

The government thanks the Court for its consideration of this matter.

                Respectfully submitted,

                Erek L. Barron
                United States Attorney

                          /s/
By:   James O'Donohue
       Assistant United States Attorney

cc:     Alan R. L. Bussard, Esq.